UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHNNY RAY VAUGHN,
    Plaintiff

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,
    Defendant

Case No. 3:16-cv-02821
District Judge Crenshaw
Magistrate Judge King

## REPORT AND RECOMMENDATION
### To The Honorable Waverly D. Crenshaw, Jr.

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Social Security disability benefits. Docket 1. The Commissioner filed an electronic copy of the administrative record. Docket 12. Plaintiff filed his Motion for Judgment on the Record, along with a supporting Memorandum of Law. Dockets 15 and 16. The Commissioner responded in opposition to Plaintiff's motion. Docket 17. The matter is ripe for determination.

On December 6, 2017, the Court referred the matter to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 631 and 636 and Administrative Order No. 24. Section 631 authorizes designation of magistrate judges to serve in districts adjoining the district for which they were appointed. 28 U.S.C. § 631. Administrative Order No. 24 was entered on June 12, 2017, and signed by the Chief Judges for the Middle District of Tennessee and the Western District of Kentucky. Section 636 authorizes magistrate judges to submit reports and recommendations to district judges on any case-dispositive matter. 28 U.S.C. § 636.

The Court finds the administrative law judge's (ALJ's) decision was supported by substantial evidence and was in accord with applicable legal standards; therefore, the RECOMMENDATION will be

1

that the Court DENY Plaintiff's Motion for Judgment on the Record (Docket 15); AFFIRM the Commissioner's final decision; and DISMISS Plaintiff's complaint.

## The ALJ findings

On February 2, 2014, Plaintiff filed applications for disability insurance benefits (DIB) pursuant to Title II of the Social Security Act and supplemental security income (SSI) benefits pursuant to Title XVI alleging disability beginning on September 4, 2012, when he stopped working. In May 2016, the ALJ issued a partially-favorable decision, finding that Plaintiff became disabled on March 8, 2013, when he was hospitalized for congestive heart failure. ALJ's decision, Administrative Record (AR), Docket 12, pp. 20-30. The ALJ determined that Plaintiff is entitled to DIB because he remained insured for DIB through the date of her decision. AR, p. 22. The ALJ informed Plaintiff that another branch of the Administration would advise him as to whether he satisfies the non-disability requirements for receipt of SSI benefits. AR, p. 30.

The ALJ found that, as of March 8, 2013, Plaintiff was restricted to sedentary work and, therefore, disabled at the fifth and final step of the sequential evaluation process based on a direct application of Rule 201.14[1] of the Appendix 2 of the regulations. AR, p. 30.

The ALJ found that, prior to March 8, 2013, Plaintiff was not disabled at the second step of the evaluation process. Specifically, the ALJ found that, although Plaintiff suffered from a medically-determinable impairment consisting of a "remote history of lumbar degenerative disc disease with radiculopathy," the impairment was not "severe," or vocationally significant, and did not satisfy the 12-month durational requirement.[2] AR, p. 23.

---

[1] Rule 201.14 describes an individual having the following medical-vocational profile: 1) Maximum sustained work capability limited to sedentary work; 2) "Closely approaching advanced age," i.e., age 50-54 (Plaintiff was born on November 28, 1959, AR, p. 240); 3)"High school graduate or more – does not provide for direct entry into skilled work"; and 4) Previous work experience that was "skilled or semiskilled – skills not transferable."

[2] "Disability" means "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

**Plaintiff's challenge to the ALJ's decision**

Plaintiff's position is that the ALJ erred in finding him disabled as of March 8, 2013, rather than accepting his alleged onset of disability date of September 4, 2012.[3] He offers the following specific arguments in support of his position:

> 1. The ALJ erred as a matter of law when she found that Plaintiff had no "severe" impairments prior to his disability onset date of March 8, 2013. Given the chronic nature of several of Plaintiff's medical impairments, the ALJ should have consulted a medical expert to address whether an earlier onset date was appropriate.
>
> 2. The ALJ's reliance on Plaintiff's receipt of unemployment benefits as a basis to find that he was not "disabled" prior to March 8, 2013 was unwarranted.
>
> 3. The ALJ neglected to consider Plaintiff's stellar work history in her credibility assessment.

(Docket 16, p. 4).

**Substantial evidence supported the ALJ's finding that Plaintiff had no "severe" impairment satisfying the durational requirement prior to March 8, 2013.**

As indicated above, the ALJ found that, prior to March 8, 2013, Plaintiff suffered from no medically-determinable impairment that was "severe" and satisfied the 12-month durational requirement. AR, p. 23.

At the second step of the sequential evaluation process, Plaintiff carries the burden of proving that he had a severe impairment satisfying the durational requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her v. Comm'r*, 203 F.3d 388, 391 (6th Cir.1999)). To meet this burden, he must show that he suffered from an impairment that had lasted or was expected to last for a continuous period of at least twelve months and that the impairment significantly limited his ability

---

[3] While Plaintiff has the right to challenge any aspect of the ALJ's decision as he sees fit, it is not apparent, as a practical matter, that he has much to gain even if he were to prevail on his argument in favor of an earlier onset of disability date. This is because he applied for disability benefits in February 2014 and, therefore, at the earliest, would be entitled to SSI benefits beginning in February 2014; and, at the earliest, would be entitled to DIB beginning in January or February of 2013. *See* Social Security Ruling (SSR) 83-20, 1983 WL 31249, at *1 ("In title II [DIB] cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. ... Under title XVI [SSI], there is no retroactivity of payment [prior to the application date]"); *see also* 42 U.S.C. § 423(b) and 20 C.F.R. § 404.320(b) (same). The ALJ found that Plaintiff became disabled in March 2013.

to do basic work activities. *See* 20 C.F.R. §§ 404.1509, 404.1521, 416.909, 416.921. The regulations define the phrase "basic work activities":

> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include --
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

The ALJ cited four evidentiary bases in support of her finding that, prior to March 8, 2013, Plaintiff had no severe impairment satisfying the durational requirement.

First, despite having health insurance, Plaintiff did not receive medical treatment for any impairment from April 2010, when he was diagnosed with lumbar degenerative disc disease, until March 8, 2013, when he was hospitalized for congestive heart failure. AR, pp. 25, 27; *compare Moore v. Comm'r*, 573 F. App'x 540, 543 (6th Cir. 2014) (citing *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990)) ("[T]he claimant's failure to seek treatment undercut[s] his complaints of disabling symptoms"); *Curler v. Comm'r*, 561 F. App'x 464, 475 (6th Cir. 2014) (quoting *Helm v. Comm'r*, 405 F. App'x 997, 1001 (6th Cir.2011)) ("We have generally found such modest treatment to be 'inconsistent with a finding of total disability'").

Second, Plaintiff continued employment through September 4, 2012, with no change in hours, job duties, or rate of pay despite allegedly suffering from the same impairments he claims had reached a disabling level of severity by the time he stopped working). AR, pp. 25, 27; *compare* 20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i) ("If you are doing substantial gainful activity, we will find that you are not disabled").

Third, Plaintiff applied for and received unemployment benefits from September 2012 until February 2014, when he applied for disability benefits. AR, p. 25; *compare Workman v. Comm'r*, 105 F. App'x 794, 801-02 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent. … There is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work") (internal citations omitted).

Fourth, the administrative record contains no medical source opinion indicating any limitation prior to March 8, 2013. AR, p. 25; *compare* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled") and 404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity").

While admittedly, none of the foregoing reasons cited by the ALJ definitely proves that Plaintiff did not have a severe impairment satisfying the durational requirement prior to March 8, 2013, Plaintiff had the burden of proving that he suffered a severe impairment satisfying the durational requirement (at step 2 of the sequential evaluation process, *Harley*, *supra*). Plaintiff failed to satisfy this burden, and the ALJ's finding that he did not have such an impairment was supported by substantial evidence, which is all that is necessary upon judicial review. *See Blakley v. Comm'r*, 581 F.3d 399, 406 (6th Cir. 2009) ("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**SSR 83-20 did not require the ALJ to call a medical advisor to infer the onset of disability date.**

Social Security regulations place the burden on Plaintiff to prove the existence of a disability. *Foster v. Comm'r*, 279 F.3d 348, 353 (6th Cir. 2001). However, "[o]nce a finding of disability is made, the

5

ALJ must determine the date of onset." *McClanahan v. Comm'r*, 474 F.3d 830, 833 (6th Cir. 2006). This does not mean, however, that the burden shifts to the Commissioner to prove non-disability prior to the Commissioner's finding of disability. *Id.* at 836. Social Security Ruling (SSR) 83-20 governs the determination of the onset of disability date. SSR 83-20, 1983 WL 31249 (1983).

Plaintiff argues that SSR 83-20 required the ALJ to call a medical advisor to infer the onset of disability date rather than select the date he was hospitalized with congestive heart failure (March 8, 2013). In cases of non-traumatic impairment, SSR 83-20 provides that, in determining the onset of disability date, the ALJ should consider "the applicant's allegations, work history and the medical and other evidence concerning impairment severity." *Id.* at *2. "These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id.* at *1. In this case, Plaintiff's allegation that he became disabled on September 4, 2012, the date of work stoppage, is not particularly significant because it is inconsistent with the medical evidence. As discussed above, the ALJ found that, from the alleged onset of disability date until March 8, 2013, Plaintiff received no medical treatment for any impairment, and no medical source opined any limitation. AR, pp. 25, 27.

Nevertheless, SSR 83-20 provides that an ALJ should consult a medical expert when the onset of disability date must be inferred:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.
> …
> How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. **At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.** *(emphasis added)* (*Id.* at *2-3).

6

Courts have, however, interpreted this as meaning that an ALJ should call on the services of a medical advisor when "there is no development of the medical record on which the ALJ can rely to ascertain onset." *McClanahan v. Comm'r*, 474 F.3d 830, 837 (6th Cir. 2006); *see also Yosowitz v. Comm'r*, No. 1:15CV2382, 2016 WL 5173319, at *17 (SSR 83-20 indicates that an ALJ should consult a medical expert "when the record is ambiguous regarding onset date"); *Edmondson v. Comm'r*, No. 3:15-cv-01060, 2016 WL 4480215, at *9 (M.D. Tenn. Aug. 24, 2016) (Because the ALJ's findings for the period prior to the onset date were supported by substantial evidence, it was unnecessary to infer the onset date and call a medical advisor).

Therefore, the ALJ was not required to infer the onset of disability date and call a medical advisor because substantial medical evidence supported the ALJ's finding that Plaintiff had no severe impairment satisfying the durational requirement prior to March 8, 2013.

**The ALJ did not err in considering Plaintiff's receipt of unemployment benefits.**

Plaintiff applied for and received unemployment benefits from September 2012, the month he stopped working, until February 2014, when he applied for disability benefits. The ALJ found that Plaintiff became disabled in March 2013. Therefore, although the ALJ could have found Plaintiff's receipt of unemployment benefits as undermining his disability claim, she exercised her discretion <u>not</u> to do so. *See Workman v. Comm'r*, 105 F. App'x 794, 801-02 (6th Cir. 2004) ("Applications for unemployment and disability benefits are inherently inconsistent").

While the ALJ considered Plaintiff's receipt of unemployment benefits as a factor counting against an earlier onset of disability date, in the end, the ALJ gave the factor little probative weight:

> … The requirements to qualify for benefits under each program are not consistent with one another in that one requires the person to certify they are actively seeking their usual work while the other requires an inability to perform any work in the national economy for a period of at least twelve consecutive months at SGA [substantial gainful activity] levels. In summary, the fact the claimant applied for and received weekly unemployment benefits is not a determining factor for denying disability benefits; however, the consistency of the claimant's statements regarding the limiting effects of his impairments is called into question based on the above criteria. (AR, p. 25).

To the extent the ALJ did so, at all, the ALJ did not err in considering Plaintiff's receipt of unemployment benefits as a factor counting (somewhat) against an earlier onset of disability date. *See Workman*, *supra*.

**The ALJ was not required to discuss Plaintiff's work history as part of her credibility assessment.**

Finally, Plaintiff argues that the ALJ erred in not explicitly discussing his "stellar" work history as part of her credibility assessment. Docket 16, p. 13. The argument apparently harkens back to Plaintiff's prior argument concerning the ALJ's consideration of his receipt of unemployment benefits. Although Plaintiff claims he was disabled beginning on September 4, 2012, when he stopped working, rather than filing for disability, he applied for unemployment benefits and certified that he was attempting to find work. Plaintiff suggests that this constituted "evidence from attempts to work," which "[a]gency policy set forth in 20 C.F.R. § 404.1529(c)(3) and SSRs 96-8p and 96-7p requires consideration of … as part of the credibility assessment." Docket 16, p. 14.

Plaintiff's argument is without merit for three reasons.

First, as indicated above, seeking unemployment (although not fatal to a disability claim) is never helpful to a claimant's credibility -- regardless of how "stellar" work history may have been.

Second, 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p do not mention "evidence from attempts to work" or otherwise require an ALJ to discuss a claimant's work history or ethic. SSR 96-8p, 1996 WL 374184, at *5 states that "[t]he RFC [residual functional capacity] must be based on all of the relevant evidence in the case record, such as: [factor 9 of 11: evidence from attempts to work]." SSR 96-8p is inapplicable because the ALJ denied Plaintiff's claim (prior to March 8, 2013) at the second step of the sequential evaluation process (prior to the determination of RFC at steps 4 and 5). Further, SSR 96-8p indicates that the ALJ should consider evidence from attempts to work and 10 other factors, not that the ALJ's written decision must explicitly articulate how each factor figured into the RFC determination.

Stated somewhat differently, Plaintiff has not proven that the ALJ did not consider his "stellar" work history.

Third, the credibility assessment is firmly within the ALJ's discretion and not to be decided anew by a reviewing court. It is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003). A reviewing court will not disturb an ALJ's credibility finding "absent compelling reason." *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001). Given that level of deference and the other unchallenged aspects of the ALJ's credibility assessment, the ALJ's silence on Plaintiff's work history does not warrant a judicial disturbance of the ALJ's decision.

## RECOMMENDATION

In light of the foregoing, the Magistrate Judge RECOMMENDS that the Court DENY Plaintiff's Motion for Judgment on the Record (Docket 15); AFFIRM the Commissioner's final decision; and DISMISS Plaintiff's Complaint.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).